IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUPERIOR ENERGY SERVICES, L.L.C., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. 09-321 |
| | * | |
| BOCONCO, INC. and THOMPSON TRACTOR CO., INC., | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT BOCONCO'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff, Superior Energy Services, L.L.C. ("Superior"), in accordance with Local Rule 7.1, and files this Brief in Opposition to the Motion to Dismiss Second Amended Complaint filed by Defendant, BOCONCO, Inc. ("Boconco"). For the reasons set forth below, Boconco's motion is due to be denied.

**Introduction**

The central issue before the Court is the ownership of four 175 kw gensets which, initially, were purchased by Boconco for installation on Hulls 128 and 129 being constructed by Boconco for Superior. However, as shown in Superior's Second Amended Complaint and its Supplemental Pleading Filed under Seal Concerning Confidential Settlement Agreement ("Supplemental Pleading"), the subject gensets were removed from Hulls 128 and 129 because they were determined to be insufficient and were replaced by four 300 kw gensets which Superior purchased at its own cost. In this action, Superior, inter alia, seeks a declaratory judgment that it is the owner of the

subject gensets and to recover possession thereof from Thompson Tractor Company, Inc. ("Thompson").  As shown in its Second Amended Complaint and Supplemental Pleading, Superior alleges two bases in support of its title to the gensets.  First, Superior's title rests on an agreement made between Superior and Boconco "that the four 175 kw gensets returned to Thompson were to be held as the property of Superior, and that two of those 175 kw gensets would be installed as spares on Hulls 130 and 131 (which at that time were being constructed by Boconco for Superior) and that Superior would use the remaining two 175 gensets as spares elsewhere in its operations."  Second Amended Complaint at 6.  Additionally, Superior alleges that the settlement agreement later entered into between it and Boconco also supports its title to the subject gensets, or by its provisions and exhibits at least acknowledges and evidences that title rested with Superior pursuant to the agreement made at the time the subject gensets were returned to Thompson.  Second Amended Complaint at paras. 8 & 13; Supplemental Pleading at paras. 1-2.

Of course, at the motion to dismiss stage, the allegations of Superior's pleadings must be taken as true and therefore Superior has alleged a sufficient basis for its title to the subject gensets.  See, e.g., The Mitchell Co. v. Campus, 2008 W.L. 183344 (S.D. Ala. 2008) at *3. As will be discussed below, Boconco's argument that the settlement agreement somehow undoes Superior's title – again, which had already accrued under the earlier agreement and was at least evidenced by the settlement agreement – is simply without merit.

**The Settlement Agreement Terminated the Executory Contract Rights and Obligations of Superior and Boconco; it Did Not Rescind Rights which were Already Accrued.**

Boconco's first argument is that by providing for the termination of the contracts relating to construction of the vessels the settlement agreement bars Superior's claim to title to the subject gensets. Boconco's brief at 4. The flaw in Boconco's argument is that it gives the settlement agreement the effect of a rescission of the contracts between the parties, as opposed to a termination of those contracts as expressly stated in the settlement agreement. Of course, "[i]t has many times been said that a mere termination of a contract is not a rescission. 'The exercise of an option to terminate prevents liability for further transactions <u>but does not affect obligations which have already accrued</u>.'" United States v. Southern Gulf Lumber Co., 106 F.Supp. 815, 818 (S.D. Ala. 1952). See also National Supply Co. v. Southern Creamery Co., 224 Ala. 507, 140 So. 590, 592 (Ala. 1932) ("To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject contract, but to annul the contract and restore the parties relative to positions which they would have occupied if no such contract had ever been made.").

Obviously, the settlement agreement between Superior and Boconco did not and was not intended to effect a rescission of the contracts between the parties. Rather, the very purpose of the settlement agreement was to effect a parting of ways between Superior and Boconco at a time at which the agreements between the parties were at varying stages of performance or completion. The basic terms of the settlement agreement are that Superior made a final payment to Boconco, Superior's ownership of

3

some items already delivered is acknowledged, title to the uncompleted Hulls 130 and 131 and equipment not already delivered was transferred to Superior, vendor warranties for all equipment purchased by Boconco for the vessels were assigned to Superior, and Superior assumed designated outstanding purchase orders placed by Boconco.  See Settlement Agreement (Ex. A to Supplemental Pleading) para. 1(b), Superior takes title and possession of the partially completed Hulls 130 and 131 and scheduled equipment including the cooling towers for the subject gensets which cooling towers had not yet been delivered to Superior; para. 1(c) Boconco obligated to deliver items to Superior "to the extent such items had not previously been delivered to or received by" Superior; Recital B and para. 6(b) acknowledgment that Hulls 128 and 129 had been delivered to Superior and that Superior had good title thereto; Warranty Assignment, Boconco assigned to Superior all "warranties, guaranties and other rights against vendors . . . and manufacturers relating to machinery, equipment, fittings and materials purchased by Boconco for installation on the vessels; Assignment and Assumption Agreement, assignment by Boconco and assumption by Superior of specified outstanding purchase orders.

The settlement agreement in no way abrogates or undoes rights which had already accrued under agreements between Superior and Boconco – such as the agreement that the gensets at issue which Superior paid for were the property of Superior and were returned to Thompson for storage on behalf of Superior.[1]  Rather than effecting a rescission of the agreements between the parties, as posited by Boconco, the settlement agreement effected a termination of those contracts at the then

---

[1] It is noted, however, that pursuant to paragraph 5(b) of the settlement agreement Boconco did rescind certain invoices it had issued for the delivered vessels (Hulls 128 and 129) and the partially completed vessels (Hulls 130 and 131).

4

existing stages of performance, and as to some matters specified the manner in which performance would be completed.  No provision of the settlement agreement purports to take away from Superior any title which had already accrued under the agreements between the parties.[2]

By its Second Amended Complaint and Supplemental Pleading, Superior has alleged that title to the subject gensets became vested in Superior pursuant to an agreement made between Superior and Boconco at the time the gensets were returned to Thompson for storage, and that the settlement agreement itself at least acknowledges or evidences that Superior already had title to and had taken possession of the subject gensets through Thompson.  Contrary to Boconco's argument, the termination of the contracts for the construction of the vessels and related agreements does not abrogate or undo Superior's title to the subject gensets.

**Although the Settlement Agreement May Not Itself Convey Title to the Gensets, the Settlement Agreement does Evidence such Title by Acknowledging that some Items had Already been Delivered to Superior, by Effecting a Transfer of the Manufacturers' Warranties for All Equipment Purchased by Boconco for Installation on the Vessels to Superior, and Effecting a Transfer of the Cooling Towers for the Subject Gensets to Superior.**

It is true that the settlement agreement contains no express provision transferring title to the subject gensets to Superior.  There was no reason for the settlement agreement to contain such a provision because the gensets had already been delivered to Superior through Thompson.  The merger provision of the settlement agreement relied upon by Boconco has no application, again, because title to the gensets had

---

[2]  Taken to its illogical conclusion, if Boconco's argument were correct Boconco could claim title to Hulls 128 and 129 as the settlement agreement "terminated" all rights and obligations arising under the contracts for the construction of those hulls.  As Boconco points out, the settlement does not effect a transfer of title of Hulls 128 and 129 to Superior; rather, title was transferred by delivery and acceptance of those hulls.  Likewise, title to the gensets at issue was transferred pursuant to the parties' agreement that the gensets were being returned to Thompson to be held as the property of Superior in accordance with that agreement.

already been transferred to Superior by delivery.  By its express terms the merger clause applies only to the subject matters of the settlement agreement. And, as acknowledged by Boconco, the transfer of title to the subject gensets was not a subject of the settlement agreement.  Therefore, the merger clause in the settlement agreement is simply inapplicable.

Again, by its pleadings Superior has alleged that title to the subject gensets was transferred by delivery of the gensets to Superior, through Thompson, pursuant to the agreement made between the parties when the subject gensets were replaced with larger gensets (also paid for by Superior.)  Thus, there was simply no need for the issue of title to the subject gensets to be addressed in the settlement agreement.  However, the settlement agreement does contain provisions evidencing that title to the gensets had already been transferred to Superior.  As already noted, pursuant to the Warranty Assignment the manufacturers' warranties for all equipment purchased by Boconco for the vessels was transferred to Superior.  Of course, the subject gensets were purchased by Boconco for installation on the vessels.  Obviously, if Boconco had title to the gensets, the gensets would have been excepted from the Warranty Assignment. Additionally, as pled in para. 2 of Superior's Supplemental Pleading, the settlement agreement provided for the delivery of the four cooling towers for the subject gensets to Superior, as Boconco had possession of the cooling towers at the time the settlement agreement was executed.  Obviously, like the Warranty Assignment, there would be no need to effect a transfer of the four cooling towers for the gensets if Superior did not own the gensets.

**Conclusion**

In accordance with the foregoing, Boconco's motion to dismiss is due to be denied. At this stage of the case the allegations of Superior's pleadings must be taken as true (which they are). Superior has alleged that pursuant to an agreement between Superior and Boconco, title to the subject gensets was transferred to Superior and Superior had already taken delivery of the gensets through the return thereof to Thompson before the parties entered into the settlement agreement. Although the settlement agreement did terminate any obligation to further perform under the contracts (or specified the manner of further performance), contrary to Boconco's argument the settlement agreement did not rescind, or undo, Superior's title to the gensets which had already accrued. Finally, while the settlement agreement itself did not expressly effect a transfer of title to the gensets, the same having already been accomplished, the settlement agreement does contain provisions, i.e., the assignment of warranties and the transfer of the cooling towers for the gensets, evidencing Superior's title to the gensets. Accordingly, Boconco's motion to dismiss is due to be denied.

          Respectfully submitted,

          s/Kenneth A. Watson
          KENNETH A. WATSON (WATSK3123)
          Attorney for Superior Energy Services, LLC

OF COUNSEL:

Jones, Walker, Waechter, Poitevent, Carrère
    & Denègre L.L.P.
Post Office Box 46
Mobile, Alabama 36601
kwatson@joneswalker.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 7th day of December, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System and a copy of this will be served by such system upon the following:

Kenneth J. Riemer, Esq.
166 Government St., Suite 100
Mobile, Alabama 36602
kjr@alaconsumerlaw.com

Alex F. Lankford, III, Esq.
Hand Arendall, LLC
RSA Tower
11 N. Water St., Suite 30200
Mobile, AL
alankford@handarendall.com

                               /s/Kenneth A. Watson
                               KENNETH A. WATSON