## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SUPERIOR ENERGY SERVICES, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | CA 09-0321-KD-C |
| | : | |
| **BOCONCO, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B), on Defendant's Motion to Dismiss Second Amended Complaint (Doc. 33), filed November 13, 2009, along with its supporting memorandum (Doc. 34) and attachments (Doc. 34-1), and Plaintiff's Opposition to Defendant Boconco's Motion to Dismiss Second Amended Complaint (Doc. 40), filed December 7, 2009.  After consideration of the motion, it is the undersigned's recommendation that it be **DENIED**.

**I.   Background.**

On June 5, 2009, Plaintiff Superior Energy Services, LLC (hereafter "Superior") filed a complaint, amended on June 12, 2009, against Defendant Boconco, Inc. (hereafter "Boconco") alleging that as a result of numerous delays, Superior had expressed its desire to exercise a clause in the contract between the two companies that would have allowed Superior

to take control of whatever work Boconco, a shipbuilding enterprise, had already completed for Superior in the event of unsatisfactory or untimely performance. (Docs. 1 & 4.) After all claims then pending were resolved through a settlement agreement executed between Superior and Boconco (Docs. 17 & 24), the action was dismissed on August 27, 2009 (Doc. 17). With leave of court, this action was reinstated on September 28, 2009 (Doc. 19) and Plaintiff, Superior Energy Services, LLC, was given the opportunity to file an amended complaint (Doc. 22) on October 30, 2009.

In this amended complaint, filed after arguments and disagreements arose over the import of the settlement agreement, Superior adds Thompson Tractor Co. (hereafter "Thompson") as a defendant and seeks a declaratory judgment that it, not Boconco, is the rightful owner of four separate generator sets then in Thompson's possession. The additional request was made that the judgment also grant possession of the four generator sets to Superior and that the custodian, Thompson, be ordered to relinquish custody (Doc. 22, p. 6.) In the alternative, Count Two of the Second Amended Complaint is a conversion action against Boconco, seeking compensatory damages in the amount of $387,333, "plus punitive damages, together with interest, attorney's fees, and costs." (*Id*. at 7.) Finally, Count Three is a breach of contract action against Boconco, again seeking $387,333, plus interest, attorney's fees, and costs. (*Id*.)

On November 13, 2009, Defendant Boconco filed a 12(b)(6) motion to dismiss, believing the current dispute (over four generator sets or "gensets") to be precluded by the terms of the settlement agreement that the parties entered into on August 12, 2009. (Doc. 34, p. 1-2.) Boconco therein contends that the settlement agreement specifically terminated "each party's respective rights, remedies, and obligations under each of the four vessel contracts" (from which the generator contracts stem). (*Id*. at 4; Settlement Agreement, ¶ 2.) Essentially, Boconco feels that Superior could have bargained for the title to the gensets in the months leading up to the settlement agreement, but that since they failed to do so, they "cannot now attempt to enforce any alleged pre-existing agreement" because all claims relating to the vessel contracts were disposed of by virtue of the settlement agreement. (Doc. 34, p. 5.)

Turning to the facts in the complaint, which are accepted as true for purposes of the motion to dismiss, Superior concisely explains that "[t]he property giving rise to and made the subject of this action includes four 175 [kilowatt] gensets, the aggregate value of which is approximately $357,333." (Doc. 22, p. 2.) After asking for a declaratory judgment that it owns the gensets at issue, Superior also states a claim for conversion, remarking that they "recently learned that Boconco hid certain property from Superior during the attempted consummation of the settlement." (*Id*.)

Superior elaborates:

> Specifically, Boconco induced Superior to assume purchase orders to Thompson for four engines and numerous parts and accessories[,] thereby obligating Superior to pay a substantial sum (as shown in the confidential Settlement Agreement filed under seal) to Thompson; however, Boconco suppressed from Superior that it had already taken delivery of the engine parts and accessories, hid this property from Superior during the attempted consummation of the settlement, and has converted these parts in violation of Superior's rights and Alabama law. These parts and accessories have a value of at least $30,000. Superior seeks to compel Boconco to deliver such property or provide replacements therefor, seeks compensatory damages for breach of contract and/or seeks compensatory and punitive damages for Boconco's tortious conduct. Superior also seeks an award of attorney's fees and costs from Boconco. Superior seeks a declaratory judgment and delivery of possession of the gensets as to Thompson.[1]

(*Id.*)

Superior explains that the four gensets under dispute are part of *six* gensets originally installed on the uncompleted vessels Boconco was then in the process of constructing, known as "Hulls 128 and 129." (Doc. 22, p. 3.) Although this construction was pursuant to a contract between Boconco and a non-party to this suit, Moreno Energy, Inc., Superior acquired a one-half interest in the vessel-building contracts, and therefore in Hulls 128 and 129. (*Id.*) Inspecting its newfound investment, Superior examined the hulls and

---

[1] Since the filing of Plaintiff's Second Amended Complaint, Thompson moved (Doc. 39) to have a third-party custodian take control of the four generator sets, a motion granted on January 21, 2010 (Doc. 48). On January 22, 2010, Thompson confirmed the delivery of the property in question to the requested custodian, Merchants Transfer Company. (Doc. 49.)

came to the conclusion that the 175kw gensets produced insufficient power thereto. (*Id*.) As a result, Superior purchased four *300* kw gensets at their own cost, and installed these, two each, on Hulls 128 and 129. (*Id*.) Two of the six 175 kw generator sets, one on each hull, remained as spare generators, while the remaining four 175 kw gensets were removed from the hulls altogether. (*Id*.) Superior explains the disposition of those four remaining gensets:

> Hulls 128 and 129 were subsequently delivered to Superior with the four 300 kw gensets purchased directly by Superior on board, and two of the 175 kw gensets on board as spares. The other four 175 kw gensets were returned to the supplier thereof, Thompson. Superior was not given a credit on the purchase price of Hulls 128 and 129 for the four 175 kw gensets not used in the construction and was not given an offset for the cost Superior incurred in providing the four 300 kw gensets installed on Hulls 128 and 129. Rather, it was agreed that the four 175 kw gensets returned to Thompson were to be held as property of Superior, and that two of those 175 kw gensets would be installed as spares on Hulls 130 and 131 (which at the time were being constructed by Boconco for Superior) and that Superior would use the remaining two 175 kw gensets as spares elsewhere in its operations.

(*Id*.) Boconco's progress in completing Hulls 130 and 131 was halted when Superior terminated those contracts, bringing an action for possession of those hulls and for damages against Boconco. (*Id*.) That action resulted in the above-mentioned settlement agreement, filed under seal (Doc. 24) in the current litigation.

Regarding that settlement agreement, Superior states in its Second

Amended Complaint that it "effected or at least acknowledged" the transfer of title to the gensets to Superior." (Doc. 22, p. 4.) Superior also alleges that *prior to* the settlement agreement, they and Boconco agreed "that two of [the four] gensets would be later installed as spares on Hulls 130 and 131 and the other two would be used by Superior elsewhere in its operations." (*Id.*) Superior explains that this agreement regarding the gensets was the consideration they received after paying for the six 175 kw gensets in the purchase price of Hulls 128 and 129 "with no offset for the four 175 kw gensets which were removed from the vessels and no credit for the four 300 kw gensets [that] Superior purchased separately [and] which were installed on Hulls 128 and 129." (*Id.* at 5.) Superior closes its assertion of the facts with the following:

> As part of the settlement, Boconco assigned and Superior assumed Boconco's rights against and obligations to certain vendors, including Thompson. Specifically, Superior assumed purchase orders to Thompson for the engines and the parts and accessories therefor. When implementing the settlement, Boconco provided an inventory of all items, for which Boconco had paid or for which Superior was assuming the obligation to pay [and] which Boconco had taken possession of and were to be loaded out on the hulls upon departure from Boconco's yard. In preparing this inventory and physically effecting a transfer of numerous items of property, Boconco suppressed that it had already taken delivery of the parts and accessories for the engines and hid the parts and accessories from Superior at the time of load out. Representatives of Boconco represented that all of the items Superior had paid for as part of the settlement or was obligating itself to pay for by assuming purchase orders were

> on the inventory and would be made available at load out.
> Boconco also assembled various items of property in certain
> areas on its yard to be taken by Superior.  However, Boconco
> had either removed from the yard or hid from Superior on the
> yard the parts and accessories for the engines, apparently
> intending to sell or use the parts and accessories for its own
> benefit.  Boconco has wrongfully asserted ownership and
> retained possession over these engine parts and accessories,
> and thereby converted the same.

(*Id*. at 5-6.)  Finally, Superior points out that the delivery of four cooling towers was also provided for in the settlement agreement, noting the fact as a strong indication of Superior's pre-existing ownership of the gensets, as the cooling towers would be useless without anything to cool.  (Doc. 40, p. 6.)

Boconco contends that the settlement agreement terminated all rights and obligations stemming from the four vessel contracts, and that clearly this genset claim arises from those contracts, as the generators were intended for use on Hulls 130 and 131.  Furthermore, Bonconco argues that if Superior *did* have an agreement with them as to the ownership of the gensets, the rights stemming from that agreement were subsumed and destroyed by the settlement agreement.  (Doc. 34, p. 5.)[2]

**II.    Discussion.**

---

[2] It is inferred that Boconco intends to posit this statement as a reason that Count Two (conversion) and Count Three (breach of contract) should also be dismissed.  It does not appear from the pleadings, however, that these claims were specifically mentioned or discussed in Boconco's filings.

### A.     Motion to Dismiss

1.     *Standard(s) of Law*

To survive a 12(b)(6) motion to dismiss, a complaint must comply with Rule 8(a)(2) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations and quotations omitted). While Rule 8's pleading standard "does not require detailed factual allegations," it does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, *supra*, at 555). Put another way, "[n]or does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, *supra*, at 557).

"[W]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). Although pleadings that are "no more than conclusions are not entitled to the assumption of

truth," a court faced with "well-pleaded factual allegations" should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (internal citations omitted). *Iqbal* continues by noting that according to Rule 8(a)(2), "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged– but it has not shown– that the pleader is entitled to relief." *Id*. (internal citations and quotations omitted).

Next, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 1949 (citing *Twombly*, 550 U.S. at 570). Then, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Furthermore, *Iqbal* explains that [t]he plausibility standard is not akin to a 'probability requirement,'" but does ask "for more than a sheer possibility that a defendant has acted unlawfully," stating that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 556-57). Put yet

9

another way, a plaintiff must put forth allegations in his or her complaint that nudge their claims "across the line from the conceivable to the plausible." *Id*. (citing *Twombly*, 550 U.S. at 570).

When attacking a complaint in a motion filed pursuant to Rule 12(b)(6), the moving party bears the burden to show that the complaint should be dismissed for failure to state a claim upon which relief may be granted. *Vitola v. Paramount Automated Food Services, Inc.*, 2009 WL 5214962 (S.D.Fla. Dec. 28, 2009). *See also Lowe v. Metabolife Int'l, Inc.*, 206 F.Supp.2d 1195, 1202 (S.D.Ala. 2002) (stating that the defendant's motion to dismiss "fails because [he] has failed to carry [his] burden of showing why the claims ought to be dismissed."); *Larsen v. AirTran Airways, Inc.*, 2007 WL 2320592, *3 (M.D.Fla. Aug. 10, 2007) ("Under the Rule 12(b)(6), the party moving for dismissal has the burden of proving that no claim has been stated."). In reviewing the merits of a motion to dismiss, the Court is required to consider that "[a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove [the alleged] facts or will ultimately prevail on the merits." *McTernan v. City of York, PA*, 564 F.3d 636, 646 (3rd Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008)) (in turn quoting *Twombly*, 550 U.S. at 553, n. 8).

After analyzing the pending motion under these standards, it is

decided that for both procedural and substantive reasons, Defendant's motion to dismiss should be denied. First, Boconco has failed to support its motion with any precedent or legal support for its argument that the settlement agreement at issue operates to bar the claims for a declaratory judgement, conversion and breach of contract. Even though Local Rule 7.1(a) clearly requires that motions to dismiss filed pursuant to Rule 12(b) be supported by a brief ("Any motion filed pursuant to Rule 12(b) ... of the Federal Rules of Civil Procedure must be supported by a brief."), the document filed by Boconco and designated as it's "LEGAL MEMORANDUM IN SUPPORT OF DEFENDANT BOCONCO, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT" (Doc. 34) does not comply with the spirit of the Rule. A thorough search of that memorandum fails to reveal any precedent that would clearly show that the factual allegations of Superior fail to state a claim upon which relief may be granted or that the complaint is otherwise fatally deficient as a matter of law. This failure to comply with the Court's local rule is revealing and a sufficient reason, standing alone, to justify a denial of the motion to dismiss.

     The specific warning in Local Rule 7.1(a) is that if the moving party fails to file a brief as required, such failure "may result in the denial of the motion." This longstanding local rule was designed to address serious

policy concerns over the failures of litigants' provide support for motions or responses to motions and the impact those failures have on the Court.  *See, e.g., Arundar v. DeKalb County School District*, 620 F.2d 493, 495 (5th Cir. 1980) ("A trial court should have the benefit of briefs from both sides in ruling on a motion. ... Without a brief, a trial court often cannot understand the legal grounds [of motions to dismiss] without much independent labor of its own, and our courts are too burdened to require the courts to do the work of counsel for the parties as all counsel and citizens are well aware.")[3]; *United States v. Vernon*, 108 F.R.D. 741, 742 (S.D. Fla. 1986) (denying motion partly because it was "devoid of any legal authority" and lacked supporting memorandum of law); *Montgomery v. First Family Fin. Servs., Inc*., 239 F.Supp.2d 600, 602 n. 1 (S.D. Miss. 2002) (denying motion that was "completely devoid of both argument and authority" (internal quotes omitted)); *Piquard v. City of East Peoria*, 887 F.Supp. 1106, 1127 (C.D. Ill. 1995) (rejecting argument "presented without any citation to authority [or] supportive legal memorandum").

Secondly, a fair reading of what is presented as a "brief" reveals Boconco's argument to be that the Second Amended Complaint fails to

---

[3] The Eleventh Circuit, in an *en banc* decision, *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

state a claim upon which relief may be granted because the Settlement Agreement of August 12, 2009 should be interpreted as "terminating all of the existing disputes between the parties." (Doc. 34, p. 2) This argument does not implicate a pleading deficiency as to the three claims presented or a factual deficiency to support the claims but is considered an assertion of an affirmative defense in a motion to dismiss. *See e.g., Thornton v. Solutionone Cleaning Concepts, Inc.*, 2007 WL 210586, *2, *4 (E.D. Cal. Jan. 26, 2007) (interpreting statement that "Defendants are not liable because 'Plaintiff has already settled all claims by way of Compromise and Release in his wage and hour claims[]'" as an affirmative defense).

No one disputes that "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 US 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). However, in order to dismiss claims for failure to state a claim because of the existence of affirmative defenses, the allegations of the complaint must contain the information necessary to show that an affirmative defense bars recovery. *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008); *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).[4] In

---

[4] Most often, in the experience of the undersigned, 12(b) motions based on the existence of affirmative defenses are granted in cases where it is obvious that a statute of limitations has expired or that judgment against a party is barred by a grant of immunity or privilege. Any precedent for finding that a declaratory judgment action should be dismissed for failing to state a claim because the issues are precluded by a settlement between the parties has

the present action, it is far from clear that the complaint or its attachments establish that the claims now being asserted are barred by the terms of the aforementioned settlement agreement.  In fact, the Court has reinstated this action as was authorized in the dismissal order ("Accordingly, it is hereby **ORDERED** that the parties' joint Motion to Dismiss, as it related to Defendant Boconco, Inc., is **GRANTED** and the above-styled action be **DISMISSED** with prejudice from the active docket of this Court subject to the right of any party to reinstate the action within thirty (30) days of the date of this order should the settlement agreement not be consummated.") and allowed Superior to amend its complaint in order to move forward on those claims that could not be resolved by agreement. (Doc. 17)   Boconco clearly disputes the factual allegations contained in  Superior's Second Amended Complaint and disagrees with the interpretation and legal scope of the settlement agreement.  Defendant's arguments as to why the complaint should be dismissed appear to be a request, through a motion to dismiss, that the terms of the settlement agreement be enforced as interpreted by Boconco - one might expect substantially the same argument to appear in defense of the declaratory judgment action.

And finally, for the reasons stated above, Boconco has failed to carry

---

not been cited by Boconco or discovered independently the undersigned.

its burden to show that Superior has failed to state a claim upon which relief may be granted. If the facts alleged in the Complaint are shown to be true, it cannot be said that Superior could not be granted relief in the form of a judgement that it is the owner of those gensets described or that it could not be granted damages for either conversion or breach of contract. Thus, on the present record, the undersigned is unable to find that Superior has failed to state a claim upon which relief can be granted.

### III.   Conclusion.

For all of the foregoing reasons, it is the undersigned's recommendation that Defendant's Motion to Dismiss Second Amended

Complaint, (Doc. 33) be **DENIED**.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 26th day of March, 2010.

<u>        s/WILLIAM E. CASSADY         </u>
**UNITED STATES MAGISTRATE JUDGE**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[5] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed.R.Civ.P. 72(b)(2).

17